76 F.3d 389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvaro Jorge CARDONA-ECHEVERRIA, Defendant-Appellant.
 No. 94-50419.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided Jan. 18, 1996.
 
 1
 Before: HALL and NOONAN, Circuit Judges; Shubb, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Alvaro Jorge Cardona-Echeverria (Cardona) appeals his convictions of and his sentence for conspiracy to assault a federal officer, assault of a federal officer, and the use of a firearm during a crime of violence. We affirm his convictions and his sentence.
 
 FACTS
 
 4
 During an investigation code-named "Operation Green Ice," federal agents targeted narcotics traffickers and money launderers in Southern California. As a part of this operation, federal agents of the Drug Enforcement Administration (DEA) posed as money launderers and agreed to launder drug proceeds for suspected drug dealers. On August 20, 1992, federal agents acting in such an undercover capacity arranged with co-defendant Jose Camillo Lizarraga for the delivery of approximately $710,000 in drug proceeds to be laundered. The meeting occurred on the same day at the Martin Aviation terminal of John Wayne Airport. DEA Special Agent Jorge Gamez (SA Gamez) and U.S. Customs Special Agent Joseph Martinez (SA Martinez), posing as couriers, waited for Lizarraga in the parking lot at around 3:00 p.m. SA Gamez saw a red Mustang and white Buick enter the parking lot. The Mustang parked about seven spaces from the white Buick. While walking with SA Martinez over to the white Buick, SA Gamez saw co-defendants Cardona, Javier Ramirez, and George Benitez sitting in the red Mustang. When the agents arrived at the white Buick, Lizarraga greeted them and then proceeded to show the agents the money, which was stored in a sports bag in the trunk.
 
 
 5
 According to trial testimony of SA Gamez and SA Martinez, Cardona, Benitez, and Ramirez shortly thereafter approached the agents near the driver's side tail light of the Buick. Benitez wore what appeared to be a police raid jacket, while Ramirez and Cardona wore charcoal or black jackets. Benitez flashed a badge at the undercover agents and claimed that his cohorts and he were police officers. Benitez then attempted to handcuff SA Gamez as if to place him under arrest. In response, SA Gamez identified SA Martinez and himself as police officers. Benitez, however, continued to pull back SA Gamez's arm.
 
 
 6
 During this time, SA Martinez stood with his hands in the air near the passenger's side tail light. Upon Ramirez's command, SA Martinez moved around to the side of the car and placed his hands on top of the car. SA Martinez testified that Cardona was standing next to Ramirez at the time. Ramirez twice instructed SA Martinez to get into the car, but SA Martinez did not comply. Cardona and Ramirez then moved closer to SA Martinez. SA Martinez, however, shut the car door with his knee. Out of the corner of his eyes, SA Martinez saw Cardona about a foot behind him to his right, and Ramirez about the same distance to his left. After pretending to open the car door, SA Martinez jumped back away from the car and drew his gun. He pointed it at Ramirez and Cardona and instructed the defendants to freeze. Benitez, however, continued to hold SA Gamez in his grasp.
 
 
 7
 Special Agents Moore, Seltzer, and Eilers, who were the surveillance agents at the airport for the operation, soon moved in on the scene and ordered Lizarraga, Ramirez, and Benitez to get down on the ground. Cardona, however, was not as close to the scene as the others. According to SA Martinez, Cardona had started inching away from the scene at some point after SA Martinez had drawn his gun. By the time the surveillance agents had arrived, Cardona was about twenty to thirty feet from the car. After Lizarraga and Ramirez had been arrested, SA Martinez instructed SA Eilers to go get Cardona before he escaped. SA Eilers then apprehended Cardona. Meanwhile, SA Seltzer twice ordered Benitez to release SA Gamez from the handcuff, but Benitez refused. SA Seltzer then pulled Benitez away and forced him to the ground.
 
 PROCEEDINGS
 
 8
 On October 9, 1992, a federal grand jury indicted Cardona, Benitez, Lizarraga, and Ramirez on the following counts:
 
 
 9
 (1) conspiracy in violation of 18 U.S.C. § 371 to assault a federal officer in violation of 18 U.S.C. § 111 and to confine federal officers in the performance of official duties in violation of 18 U.S.C. § 1201(a)(5);
 
 
 10
 (2) unlawfully detaining a federal officer in the performance of official duties in violation of 18 U.S.C. § 1201(a)(5);
 
 
 11
 (3) unlawfully kidnapping a federal officer in violation of 18 U.S.C. § 1201(d);
 
 
 12
 (4) assaulting a federal officer in violation of 18 U.S.C. § 111; and
 
 
 13
 (5) using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), (d).
 
 
 14
 On January 19, 1993, Ramirez, Benitez, and Lizarraga pleaded guilty to counts four and five of the indictment for assaulting a federal officer and using a firearm in relation to a crime of violence. Lizarraga later was sentenced to a term of 57 months in prison, and Benitez, a term of 93 months. Ramirez was scheduled to be sentenced on May 10, 1993.
 
 
 15
 On February 16, 1993, Cardona stood trial on counts one, four, and five for conspiracy to assault a federal officer, assault of a federal officer, and use of a firearm during a crime of violence. Counts two and three were dismissed by the district court on the morning of the trial. At trial Cardona testified that he had no part in the conspiracy but was at the airport to seek employment in the travel business, in which he had earned a degree. Cardona claimed that Ramirez, whom he had met previously, had offered him a ride to the airport on August 20, 1992, so he could go look for a different job. Cardona said he began wandering in search of a place but soon stumbled upon the assault while it was in progress. Cardona also introduced a videotape of post-arrest confessions by Ramirez and Benitez, who admitted to planning and carrying out the assault but denied having seen Cardona prior to the arrest. In addition, both men said that Cardona was "just some guy we picked up."
 
 
 16
 On February 22, 1993, Cardona was found guilty by a jury on all three remaining counts.
 
 
 17
 On July 7, 1994, District Judge Gary Taylor sentenced Cardona to 97 months in prison. The sentence was based on factual findings by the district court that Cardona had engaged in more than minimal planning, had been motivated by a desire for money in his criminal actions, had engaged in the physical restraint of a victim, and had obstructed justice by his testimony on the stand.
 
 
 18
 On July 12, 1994, Cardona timely filed a notice of appeal.
 
 ANALYSIS
 
 19
 There is sufficient evidence to support all of Cardona's convictions. See United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992). First, Cardona's conspiracy conviction is supported by the telephone records introduced by the government at trial and the testimony of the federal agents, both of which link Cardona to the co-conspirators Lizarraga, Benitez, and Ramirez immediately before or during their assaults of the federal officers. Second, there is sufficient evidence to support Cardona's conviction for assaulting a federal officer. Not only is Cardona directly responsible for his actions in attempting to force SA Martinez into the Buick, but he is vicariously responsible for the assaults committed by Benitez and Ramirez. See Pinkerton v. United States, 328 U.S. 640, 647 (1946); United States v. Castaneda, 9 F.3d 761, 765 (9th Cir.1993), cert. denied, 114 S.Ct. 1564 (1994). Finally, Cardona's conviction for use of a firearm during and in relation to a crime of violence is supported by Pinkerton co-conspirator liability for the actions of Ramirez and Benitez, both of whom carried guns during the assault of the federal agents.
 
 
 20
 In addition, none of the district court's sentencing determinations is erroneous. Cardona's sentence can be based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3 (Nov. 1993). The district court first found that Cardona had committed an assault that involved more than minimal planning. See U.S.S.G. § 2A2.2 (Nov. 1993). This finding is supported by Cardona's extensive travel on the day of the assault, as well as Lizarraga's plan to stage a robbery of the money he was supposed to deliver by having Ramirez and Benitez pose as police officers. Second, the district court found that Cardona was motivated by financial gain. See U.S.S.G. § 2A2.2(b)(4) (Nov. 1993). This finding is supported by the admission of the other defendants that they were seeking financial gain and on Cardona's participation in the conspiracy and assault. Likewise, the district court's finding that Cardona had engaged in the physical restraint of a victim is supported by Benitez's physical restraint and handcuffing of SA Gamez. The district court also found that Cardona had willfully obstructed justice by committing perjury at trial, thus requiring an increase in the offense level for sentencing. U.S.S.G. § 3C1.1 (Nov. 1993). This finding comports with the requirements of United States v. Dunnigan, 113 S.Ct. 1111, 1116-17 (1993), and was not clearly erroneous. See United States v. Ancheta, 38 F.3d 1114, 1117 (9th Cir.1994).
 
 
 21
 Accordingly, we AFFIRM.
 
 
 
 *
 The Honorable William B. Shubb, United States District Judge, Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3